UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Breyonna Marie Abercrombie, | No. 2:23-cv-01529-KJM-AC |
| Plaintiff, | ORDER |
| v. | |
| Vestra Labs LLC, et al., | |
| Defendants. | |

The attorneys who previously represented defendant Vestra Labs LLC withdrew, and the court stayed this action for sixty days to allow Vestra to find substitute counsel. ECF No. 21. Vestra has not located substitute counsel, and as plaintiff recently has noted, the stay has expired. *See* ECF No. 22.

Vestra cannot appear in this action without counsel. *Id.* It ordinarily is appropriate to strike a corporate defendant's responsive pleading if that corporation is not represented by counsel, which ultimately may lead to a default judgment against that defendant. *See, e.g.*, *Emp. Painters' Trust v. Ethan Enterprises, Inc.*, 480 F.3d 993, 998 (9th Cir. 2007); *Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215, 1217 (S.D. Cal. 2008). In this case, however, plaintiff Breyonna Abercrombie asks the court instead to rule on her pending motion to remand the case to state court. *See* Status Rep., ECF No. 22; Mot. Remand, ECF No. 6. Some of her arguments in that motion bring this court's jurisdiction into question. This court cannot adjudicate Abercrombie's

1

1   claims if it has no jurisdiction to do so. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,
2   101–02 (1998). Nor can Vestra file any opposition to the pending motion, as it cannot appear in
3   this action as an unrepresented corporate defendant. The court therefore takes the pending motion
4   to remand under submission and determines whether, as a threshold matter, it has jurisdiction
5   over Abercrombie's claims.

6   Vestra invoked this court's jurisdiction under the Class Action Fairness Act of 2005 and
7   28 U.S.C. § 1441 when it removed this case from state court. *See* Not. Removal ¶ 11, ECF No. 1
8   (citing 28 U.S.C. § 1332(d)). Under the Class Action Fairness Act, federal district courts have
9   original jurisdiction over class actions if the amount in controversy exceeds $5 million, if at least
10  one member of the plaintiff class is a citizen of a different state than at least one of the
11  defendants, and if the class includes at least one hundred members. *See* 28 U.S.C. § 1332(d)(2),
12  (5)(B). Under § 1441, a case filed in state court can be removed to the federal district court if the
13  federal district court would have had original jurisdiction over that case. 28 U.S.C. § 1441(a).

14  Abercrombie argues this court does not have jurisdiction under § 1441(a) because Vestra
15  did not show in its notice of removal that more than $5 million is in controversy. *See* Mot.
16  Remand at 3–13. When a plaintiff disputes a defendant's allegations about the amount in
17  controversy, removal is proper "'if the district court finds, by the preponderance of the evidence,
18  that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee Basin*
19  *Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (quoting 28 U.S.C. § 1446(c)(2)(B)).
20  "[B]oth sides submit proof and the court decides, by a preponderance of the evidence, whether the
21  amount-in-controversy requirement has been satisfied." *Id.*

22  Abercrombie asserts several claims in her operative first amended complaint. Vestra
23  estimated the amount in controversy for several of these claims in its notice of removal and added
24  these estimates together, resulting in an allegation that approximately $6.4 million is in
25  controversy. *See* Not. Removal at 15. But that estimate is not reasonable, and it is not supported
26  by a preponderance of evidence, as explained below.

27  In her first and second claims, Abercrombie alleges Vestra did not pay mandatory
28  minimum and overtime wages for all of the time she and other similar employees were working.

*See* First Am. Compl. ¶¶ 40, 52, Not. Removal Ex. H, ECF No. 1.  She alleges Vestra required her and other employees to work during their rest and meal breaks, resulting in more than eight hours of work per day and more than forty hours of work per week.  *See id.* ¶ 41.  She does not specify in her complaint how often or how consistently she or other employees worked through their breaks; she describes Vestra's actions only vaguely as a "systematic pattern of wage and hour violations." *Id.* ¶ 3.  Vestra assumed, based on these allegations, that Abercrombie intended to prove at trial that employees worked at least fifty minutes each day without pay, i.e., one thirty-minute meal break and two ten-minute rest breaks.  *See* Not. Removal ¶ 42.  Over a five-day workweek, that estimate would translate to more than four hours' unpaid overtime.  *See id.*  Vestra reviewed its employment records and found records showing 394 people worked at the company during the relevant time period.  *Id.* ¶ 43.  They earned about $22.01 on average per hour over a total of 11,164 work weeks.  *Id.*  Based on these records, Vestra estimated that Abercrombie's first claim put almost $1.5 million in controversy.[1]

But as Abercrombie correctly points out, it was unreasonable for Vestra to read the complaint as alleging employees worked more than four hours' unpaid overtime every week.  *See* Mot. Remand at 4–5.  Employees do not go off the clock for their rest breaks, so it was unreasonable to assume class members were seeking overtime based on unpaid rest breaks.  Nor was it reasonable for Vestra to assume employees worked through every meal break every day for several years.  A "systematic pattern" is not an unbroken trend.  *See Ibarra v. Manheim Investment, Inc.*, 775 F.3d 1193, 1198–99 (9th Cir. 2015).  At most, it would be reasonable to read Abercrombie's vague allegations as implying employees were forced to work through about half of their meal breaks on average.  A more generous assumption would be speculation "pulled from thin air" without support in the complaint's language or evidence.  *Id*. at 1199; *see also, e.g.*, *Perez v. Rose Hills Co.*, 131 F.4th 804, 809–10 (9th Cir. 2025) (permitting defendants and district courts to rely on reasonable assumptions, but only if rooted in evidence or language in complaint); *Moe v. GEICO Indem. Co.*, 73 F.4th 757, 762 (9th Cir. 2023) (declining to speculate

---

[1] Four hours per workweek × 11,164 workweeks × $22.01 per hour × 1.5 overtime premium = $1,474,317.84.

1   in absence of supporting allegations and evidence). A reasonable estimate of the amount in
2   controversy for claims one and two is therefore about $460,000.[2]

3   In Abercrombie's second and third claims, she alleges Vestra owes her and other
4   employees a statutory penalty of one hour's pay for each missed meal and rest break. *See* First
5   Am. Compl. ¶¶ 61–63, 68–70. Vestra assumed based on these allegations that each member of
6   the class was seeking a two-hour penalty for each workday: one hour for the missed meal break
7   and one hour for the missed rest breaks. *See* Not. Removal ¶¶ 44–47. This estimate likewise was
8   not reasonable. At most it would be reasonable to assume, based again on Abercrombie's
9   allegation of a "systematic pattern of wage and hour violations," that employees work through
10  about half of their meal and rest breaks on average. Based on this reasonable assumption, claims
11  three and four put about $1.2 million in controversy.[3]

12  Vestra next turned to Abercrombie's sixth claim and her allegation that the company
13  distributed inaccurate wage statements to Abercrombie and other employees. *See* Not. Removal
14  ¶ 49 (citing First Am. Compl. ¶¶ 80–85). Vestra cited California Labor Code section 226, which
15  awards employees a penalty of $50 for the first violation of the wage statement law and $100 for
16  each later violation, with a cap of $4,000 in total penalties. *See id*. Vestra referred to its records,
17  which showed 265 employees had received at least one paycheck during the relevant time period
18  and worked at the company for more than eleven pay periods on average. *Id.* Based on those
19  records, Vestra estimated Abercrombie's wage statement claim put about $278,000 in
20  controversy.[4] *Id.* It was reasonable for Vestra to assume its allegedly "systematic practice" of

---

[2] Five thirty-minute breaks per workweek, divided by two, is 75 minutes per workweek. Seventy-five minutes per workweek (1.25 hours) × 11,164 workweeks × $22.01 per hour × 1.5 overtime premium = $460,724.33.

[3] Employees who on average work through half of their ten daily meal and rest breaks would miss five meal or rest breaks per workweek on average, and therefore would be entitled to five one-hour statutory penalties per workweek on average. Five hours per workweek × 11,164 workweeks × $22.01 per hour = $1,228.598.20.

[4] An employee who receives eleven incorrect wage statements is entitled to one $50 penalty and ten $100 penalties, for a total of $1050 in penalties. Vestra assumed each of the 265 employees would claim to have received at least eleven incorrect wage statements, resulting in total penalties of $278,250.

4

violations would cause at least one error per statement. Its estimate therefore was reasonable for this claim.

In Abercrombie's seventh and eighth claims, she alleges Vestra did not pay wages to its employees before the relevant statutory deadlines. *See* First Am. Compl. ¶¶ 86–96. Under California law, an employee who is not paid before the statutory deadline is entitled to a maximum penalty of 30 days' pay. *See* Cal. Labor Code § 203. Vestra's records showed that about 356 employees were terminated during the relevant time period, and they had earned $21.95 per hour on average. *See* Not. Removal ¶ 50. Based on Vestra's assumptions about the amount of unpaid overtime at issue—fifty minutes per day, as described above—it estimated the seventh and eighth claims together put more than $2 million in controversy.[5] But it was not reasonable to include overtime pay in this estimate. As Abercrombie correctly points out, courts have not included overtime pay in their calculations of the relevant statutory penalty. *See, e.g.*, *Hernandez v. Martinez*, No. 12-06133, 2014 WL 3962647, at *13–14 (N.D. Cal. Aug. 13, 2014). It was reasonable, however, for Vestra to assume each member of the class was seeking the maximum, thirty-day penalty. Abercrombie alleges Vestra had a "uniform" policy not to pay, and her allegations do not suggest that Vestra eventually paid the amounts she now seeks, but too late; her complaint implies employees were never paid. *See* First Am. Compl. ¶¶ 86–96; *see also, e.g.*, *Hernandez*, 2014 WL 3962647, at *13 (reasoning similarly). It is reasonable therefore to assume claims seven and eight put more than $1.8 million in controversy.[6]

In addition to her class claims, Abercrombie seeks penalties under the California Private Attorneys' General Act (PAGA). *See* First Am. Compl. ¶¶ 107–14. Vestra included an estimate of the amount in controversy based on these penalties. This methodology was improper, however. A PAGA claim is not a class claim. The PAGA penalty protects and enforces the state's interests on the state's behalf, so those penalties cannot be aggregated with others an

---

[5] An employee who works eight hours at a standard rate of $21.95 and fifty minutes at the 1.5× overtime rate earns $203.04. Thirty days' pay at that rate would be $6,091.20, which for 356 employees is $2,168,467.20.

[6] Eight hours per day at $21.95 per hour is a daily wage of $175.60, which over thirty days is $5,268. If all 356 employees seek that penalty, the amount in controversy is $1,875,408.

employee class might seek. *See Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122–23 (9th Cir. 2013).

Finally, Vestra assumed Abercrombie would later seek an award of her attorneys' fees equal to 20 percent of the total class recovery. *See* Not. Removal ¶ 53; First Am. Compl. at 22 (prayer for relief seeking "reasonable attorneys' fees" under state law). It can be reasonable to assume a complaint puts a reasonable attorneys' fee award in controversy if a plaintiff relies on statutes that permit an award of those fees. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 788 (9th Cir. 2018). But a defendant "must prove the amount of attorneys' fees at stake by a preponderance of the evidence," and a court "may not relieve the defendant of its evidentiary burden by adopting a per se rule" that some percentage of the total award is in controversy. *Id.* at 796. Vestra offered no evidence and no reasoning to support its assumption that a 20 percent fee is at stake or would be reasonable. But even if Vestra had shown a 20 percent fee was reasonable and in controversy, adding that fee would not yield a sum higher than the $5 million jurisdictional threshold required for this case to remain in federal court.[7]

Vestra did not rely on Abercrombie's other claims and allegations to allege more than $5 million is in controversy. *See* Not. Removal at 15 (allocating no dollar values to claims for failure to reimburse business expenses and violations of California's Unfair Competition Law). In total, then, Vestra's Notice of Removal supports the reasonable assumption that Abercrombie's allegations put about $3.8 million in controversy in this case.[8] Because that total is lower than the $5 million jurisdictional threshold, this court would not have had original jurisdiction over this action under § 1332(d) when the removal notice was filed, so the court lacks removal jurisdiction under § 1441(a).

The court need not and does not consider whether Vestra removed this action after the relevant deadline, as Abercrombie also contends. *See* Mot. Remand at 2–3.

---

[7] As noted below, it is reasonable to conclude Abercrombie's complaint puts about $3.8 million in controversy; with a 20 percent fee, that figure would not exceed $4.7 million.

[8] $460,724.33 + $1,228.598.20 + $278,250.00 + $1,875,408 = $3,842,980.53.

1    The motion to remand (ECF No. 6) is **granted**.  This action is **remanded** to the Superior
2 Court of the State of California for the County of Sacramento.
3    IT IS SO ORDERED.
4 DATED: June 10, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE